Tagged Opinion



**ORDERED in the Southern District of Florida on February 22, 2007.**

　　　　　　　　　　　　　　　　　　　Paul G. Hyman, Chief Judge
　　　　　　　　　　　　　　　　　　　United States Bankruptcy Court

_____

```
              UNITED STATES BANKRUPTCY COURT
               SOUTHERN DISTRICT OF FLORIDA
                 WEST PALM BEACH DIVISION

In re:                              CASE NO.: 05-38506-BKC-PGH
                                    CHAPTER 7
Daniel J. Hahn, Jr.
and Yadira Ordonez Hahn,

     Debtors.
_____/

Deborah Menotte, Trustee,           ADV. NO.: 06-1492-BKC-PGH-A

     Plaintiff,

v.

Daniel J. Hahn, Jr.
and Yadira Ordonez Hahn,

     Defendants.
_____/
```

**MEMORANDUM OPINION SUSTAINING TRUSTEE'S OBJECTION TO DISCHARGE**

　　　**THIS MATTER** came before the Court for trial on January 19, 2007, upon Deborah Menotte's (the "Trustee") *Complaint Objecting*

*to Discharge* (the "Complaint").  Daniel J. Hahn ("Mr. Hahn") and Yadira Ordonez Hahn ("Mrs. Hahn") (collectively the "Debtors") appeared *pro se* at the trial.  The Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

The Debtors are a married couple residing in Boca Raton, Florida.  The Debtors filed a Chapter 7 bankruptcy petition on October 17, 2005.  Mr. Hahn is a dental technician, fabricating crowns and bridges that are used by dentists in the treatment of patients.  Mr. Hahn is the sole proprietor of Ordonez Dental Ceramics ("Ordonez Dental").  Mrs. Hahn worked with her husband from 1996 to October 2004.  Until August 2003 Ordonez Dental was a successful venture, with Mr. Hahn earning an income of approximately $140,000 per year according to Mr. Hahn's testimony at the trial.  On August 19, 2003 Mr. Hahn was involved in an automobile accident that disabled him.  Mr. Hahn was unable to work from the time of his accident until January 2006.

After the accident the Debtors could not meet their monthly debts.  From August 2003 until October 2004 the Debtors tried to keep Ordonez Dental in business through outsourcing and other strategies, but the Debtors' Statement of Financial Affairs reflects that Ordonez Dental did not earn income in either 2004

or 2005.  In April 2004 the Debtors' banking account was closed due to numerous overdrafts.

Mr. Hahn testified that the Debtors' income came from five sources between the date of the accident and the date of the bankruptcy filing: 1) the Debtors received approximately $80-90,000 from Mrs. Hahn's parents; 2) the Debtors sold Mrs. Hahn's jewelry and their children's toys in December 2003 for approximately $20-30,000; 3) the Debtors refinanced their home in December 2004, and thereby received $11,100; 4) the Debtors sold approximately $20,000 worth of laboratory equipment on or before October 2004; and 5) Mrs. Hahn surrendered a life insurance policy in 2004, for which the Debtors received $9,600.  The Debtors did not maintain any documentation related to any of these transactions.  Mr. Hahn testified that the Debtors did not maintain a record of these transactions because they did not anticipate declaring bankruptcy at a later date.  Mr. Hahn also testified that the proceeds from the disposition of these assets was used to pay their creditors and living expenses.

The Debtors filed a Chapter 7 petition on October 17, 2005. The Debtors' schedules disclose that they own a fee simple interest in real property located in Boca Raton worth $510,000, with a mortgage in the amount of $436,347.20.  The Debtors' schedules list personal property worth $19,892 and unsecured claims in the amount of $131,755.43.  The Debtors' schedules

reflect current monthly income of $0.00 and current monthly expenditures of $6,474.65.  Mr. Hahn testified at trial that the bankruptcy schedules were ninety percent accurate, and that he was unaware that it was possible to amend the schedules.

At the 341 meeting of creditors, Mr. Hahn asked the Trustee if he could resume work as a dental technician.  The Trustee asked Mr. Hahn what laboratory equipment he had that belonged to him.  Mr. Hahn stated that he kept an air compressor, a furnace, and other personal instruments.  The Trustee informed the Debtors that she would like to take photographs of the Debtors' personal property and equipment.  When the Trustee's agent arrived at the Debtors' property, there were several additional pieces of laboratory equipment (the "Disputed Lab Equipment") within the garage.  Mr. Hahn claimed that the Disputed Lab Equipment actually belonged to Charles Newton ("Newton"), who is also a dental technician.  At trial, Mr. Hahn and Newton presented conflicting testimony as to who owned the Disputed Lab Equipment.  Mr. Hahn testified that he and Newton discussed entering into a partnership together in December 2005, and that in furtherance of the prospective partnership, Newton left the Disputed Lab Equipment in the Debtors' garage until a more suitable facility could be found.  Mr. Hahn testified that the partnership discussions terminated after Newton discovered that the Debtors were in bankruptcy.

Newton testified that he did not own the Disputed Lab Equipment located in the Debtors' garage. Newton further testified that while he had contemplated forming a partnership with Mr. Hahn several years ago, no such discussions took place on or about December 2005.

On March 6, 2006 the Trustee filed *Trustee's Objection to Exemptions*, which sought: a determination that certain items of personal property owned by the Debtors were property of the estate; authorization to sell the personal property owned by the Debtors; and turnover of two automobiles. On April 13, 2006 the Court entered an *Order Granting Trustee's Objection to Exemptions* ("Turnover Order"). Pursuant to the Turnover Order, the Debtors were required to turnover the personal property, including the automobiles, within ten days of the entry of the Turnover Order. On April 25, 2006 the Debtors filed an untimely *Motion for Reconsideration* ("Reconsideration Motion"). Mr. Hahn testified that he offered the Trustee's attorney the opportunity to pick up the personal property subject to turnover, but that the Trustee's attorney never responded to him. On December 26, 2006, the Court entered an *Agreed Order Granting Trustee's Motion to Compel Debtors to Comply with Court Order Sustaining Trustee's Objection to Exemptions and for Referral to the United States Attorney*

*Pursuant to 18 U.S.C. § 3057* (the "Agreed Order").[1]  The Reconsideration Motion was deemed to be withdrawn under the terms of the Agreed Order.

The Complaint, filed on May 15, 2006, argues that the Court should deny the Debtors a discharge pursuant to 11 U.S.C. § 727(a)(2)-(6).  The Complaint is based on allegations that the Debtors: concealed income and assets; removed and/or concealed documents relating to funds acquired from various asset dispositions; failed to maintain documentation necessary to ascertain the financial condition and business transactions of the Debtors; made false oaths on the bankruptcy schedules and Statement of Financial Affairs; failed to satisfactorily explain a loss or deficiency of assets to meet the Debtors' liabilities; and failed to comply with the Turnover Order.  The Debtors filed an answer which denies the Trustee's allegations.

---

[1]Under the terms of the Agreed Order, the Court reserved jurisdiction to hear the criminal referral portion of the *Trustee's Motion to Compel Debtors to Comply with Court Order Sustaining Trustee's Objection to Exemptions and for Referral to the United States Attorney Pursuant to 18 U.S.C. § 3057*. The hearing on the criminal referral was held contemporaneously with the January 19, 2007 trial.  The Court will enter a separate order on the criminal referral portion of Trustee's motion.

**CONCLUSIONS OF LAW**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(J).

Section 727 of the Bankruptcy Code provides that a debtor shall be granted a discharge unless one or more of twelve enumerated reasons to deny the discharge exist. 11 U.S.C. § 727(a)(1)-(12). While objections to discharge should be liberally construed in favor of a debtor, a discharge in bankruptcy is a privilege, not a right, and should only inure to the benefit of the honest debtor. *See Goldberg v. Lawrence (In re Lawrence)*, 227 B.R. 907, 915 (Bankr. S.D. Fla. 1998). It is the Trustee's burden to prove by a preponderance of the evidence that the Debtors are not entitled to a discharge. *United States v. Craig (In re Craig)*, 252 B.R. 822, 827 (Bankr. S.D. Fla. 2000); Fed. R. Bankr. P. 4005. Upon the introduction of evidence sufficient to sustain the Trustee's objection, the burden shifts to the Debtors to explain why the discharge should nevertheless be granted. *Craig*, 252 B.R. at 827.

**A. *11 U.S.C. 727(a)(3)***

Section 727(a)(3) provides:

> (a) The court shall grant the debtor a discharge, unless–
> (3) the debtor has concealed , destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including

>     books, documents, records, and papers, from
>     which the debtor's financial condition or
>     personal or business transactions might be
>     ascertained, unless such act or failure to act
>     was justified under all the circumstances of
>     the case.

11 U.S.C. § 727(a)(3).  "The purpose of this provision is to ensure that the trustee and creditors receive sufficient information to trace a debtor's financial history for a reasonable period past to present."  *United States v. Trogdon (In re Trogdon)*, 111 B.R. 655, 658 (Bankr. N.D. Ohio 1990).  The section "requires as a precondition to discharge that debtors produce records which provide creditors with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present."  *In re Juzwiak,* 89 F.3d 424, 427 (7th Cir. 1996)(citations and quotations omitted).

    The Debtors assert that they turned over all documentation that they had in their possession.  However, the requirement to "keep" records "has the same meaning it would have in phrases such as "to keep a diary" or "to keep a record," that is, to maintain a record by entering it into a book."  *Peterson v. Scott (In re Scott)*, 172 F.3d 959, 969 (7th Cir. 1999).  While *Juzwiak* dealt with the sufficiency of records kept by the debtor, it is the lack of records rather than the sufficiency of records that is at issue in this case. Debtors here failed to keep any records relating to the following transactions: the funds received from

Mrs. Hahn's parents; the sale of the jewelry and toys in December 2004; the sale of dental equipment on or about October 2004; the surrender of Mrs. Hahn's life insurance policy; and the refinancing of the Debtors' home in December 2004.  The Debtors have also failed to maintain any records relating to the disposition of funds received from all of these transactions.  The Debtors failure to maintain any records of these transactions is sufficient grounds for a denial of discharge pursuant to section 727(a)(3).

The Court is aware of contrary authority standing for the proposition that the plaintiff must not only demonstrate that a debtor has failed to keep records, "but that debtor failed to keep records for a purpose–namely to avoid having to surrender such records for discovery to a suspicious trustee." *Salfi v. Prevatt (In re Prevatt)*, 261 B.R. 54, 58 (Bankr. M.D. Fla. 2000).  To the extent that *Prevatt* holds that a trustee or creditor is required to prove that the failure to keep records must be purposeful, the Court disagrees with the decision.  The ability to keep records necessary to ascertain a debtor's personal or business transactions is normally fully within the control of a debtor; it would be inequitable to grant a discharge to a debtor who by his or her own action or inaction, regardless of whether an intent to defraud existed, has unjustifiably failed to keep records from which the trustee can determine a debtor's financial

condition. *See McVay v. Phouminh (In re Phouminh)*, 339 B.R. 231, 247 (Bankr. D. Colo. 2005).

The Debtors alternatively argue that the duty to maintain records only applies to the year before the bankruptcy petition. The Court notes that the plain language of section 727(a)(3) does not specify a time period for which the duty to maintain records exists prior to the filing of a bankruptcy petition. For purposes of section 727(a)(3), the relevant time period is one that extends "a reasonable period in the past so that [the debtor's financial history] may be ascertained." *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3d Cir. 1992)(citations omitted). A "reasonable period" under section 727(a)(3) varies on a case-by-case basis, but is understood to encompass at least the two year period prior to the filing of the bankruptcy petition. *See Losinski v. Losinski (In re Losinski)*, 80 B.R. 464, 474 (Bankr. D. Minn. 1987). All of the transactions which the Debtors failed to keep records for occurred within the two year period prior to the bankruptcy petition being filed.

After determining that the Debtors failed to keep recorded information from which their financial condition and transactions might be ascertained, the Court's inquiry shifts to whether their failure to keep records was justified under all of the circumstances of the case. 11 U.S.C. § 727(a)(3). In examining whether the Debtors are justified in their failure to keep

records, the Court shall consider the Debtors' education, the sophistication of the Debtors' business, the Debtors' personal financial structure, and any other circumstances that should be considered in the interest of justice.  *Nisselson v. Wolfson (In re Wolfson),* 139 B.R. 279, 287 (Bankr. S.D.N.Y. 1992).  The Court finds that the Debtors were not justified in their failure to keep records.  The Debtors are educated and the Debtors' personal financial structure and the sophistication of the Debtors' business warrants keeping proper records.  The Debtors kept detailed records up until the time of Mr. Hahn's accident.  The Debtors did not assert that Mr. Hahn's health problems were the source of the Debtors inability to keep proper records, but rather that they had not kept records as they did not anticipate declaring bankruptcy at a future date.  *See State Bank of India v. Sethi (In re Sethi)*, 250 B.R. 831 (Bankr. S.D.N.Y. 2000) (denying discharge to debtors based on section 727(a)(3), where debtor did not contend that multiple heart surgeries had prevented him from keeping proper records).  It is also important to note that the financial records in question related to gifts and asset proceeds that were not of a diminutive value, but whose value instead exceeded $150,000.  Based upon the Debtors' failure to maintain records from which the Trustee could ascertain the Debtors' financial condition, the Court must deny the Debtors their discharge pursuant to 11 U.S.C. § 727(a)(3).

**B. 11 U.S.C. § 727(a)(5)**

The Trustee also argues that the discharge should be denied pursuant to section 727(a)(5), which provides that a debtor shall be granted a discharge unless "the debtor has failed to explain satisfactorily, before the determination of denial of discharge under this paragraph, any loss of assets to meet the debtor's liabilities."  11 U.S.C. § 727(a)(5).  In order to meet her burden under section 727(a)(5), the Trustee must "establish that the debtor at one time owned a substantial identifiable asset, not too remote in time to the date of the commencement of the case; that on the date of filing the voluntary petition the debtor no longer had the particular asset."  *Bernstein v. Zeiss (In re Bernstein)*, 78 B.R. 619, 622 (S.D. Fla. 1987).  The Court finds that the Debtors owned the following substantial identifiable assets, whose value exceeded $150,000, prior to the commencement of the case that were no longer owned by the debtor as of the petition date: the funds received from Mrs. Hahn's parents; the dental equipment sold in September and October of 2004; jewelry and toys sold in December 2003; Mrs. Hahn's life insurance policy; and funds received from refinancing the Debtors' home.

Upon establishing a *prima facie* case that the Debtors owned these assets, and that at the date of the petition the Debtors no

longer owned these assets, the burden shifts to the Debtors to provide a satisfactory explanation. *Hawley v. Cement Indus. (In re Hawley),* 51 F.3d 246, 249 (11th Cir. 1995).  "Vague and indefinite explanations of losses that are based upon estimates uncorroborated by documentation are unsatisfactory." *Chalik v. Moorefield (In re Chalik),* 748 F.2d 616, 619 (11th Cir. 1984)(citations omitted).  The Debtors have testified that they used the proceeds from the sale of their assets and money received from Mrs. Hahn's parents to pay creditors and fund living expenses.  The Debtors have failed to corroborate this explanation with any documentation.  The Court finds that the Debtors' explanation is unsatisfactory and therefore must also deny the Debtors their discharge pursuant to 11 U.S.C. § 727(a)(5).

Having determined that the Debtors should be denied a discharge pursuant to 11 U.S.C. § 727(a)(3) and (a)(5), the Court need not rule on the issues and arguments presented by the Trustee as to 11 U.S.C. § 727(a)(2)(A), (a)(2)(B), (a)(4)(A), and (a)(6)(A).  The Court makes no finding as to whether Mr. Hahn or Newton is the owner of the Disputed Lab Equipment found in the Debtors' garage.

**CONCLUSION**

For the reasons stated above, the Court finds that the Debtors should be denied a discharge pursuant to 11 U.S.C. § 727(a)(3) and 11 U.S.C. § 727(a)(5). The Court will enter a separate final judgment pursuant to Federal Rule of Bankruptcy Procedure 9021 in the Trustee's favor sustaining the Trustee's objection to the Debtors' discharge.

**ORDER**

The Court, having considered the evidence presented at trial, the testimony of the witnesses, the argument of counsel, the applicable law, the submissions of the parties, and being otherwise fully advised in the premises hereby **ORDERS AND ADJUDGES:**

1. The Trustee's Objection to the Debtors discharge is **SUSTAINED.**

2. The Debtors' discharge is **DENIED.**

###

Copies Furnished to:

Michael R. Bakst, Esq.
222 Lakeview Ave #1330
West Palm Beach, FL 33401

Daniel Hahn
Yadira Hahn
19844 Dinner Key Dr

Boca Raton, FL 33498

AUST